**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

TIMOTHY SOLEK,
    *Plaintiff,*

    v.                                                        No. 3:20-cv-01600 (VAB)

MARGARET WALLACE, et al.,
    *Defendants.*

**INITIAL REVIEW ORDER**

Timothy Solek ("Plaintiff"), is currently confined at MacDougall-Walker Correctional

Institution. He has filed a civil rights Complaint *pro se* under 42 U.S.C. § 1983 against Advanced

Practice Registered Nurse ("APRN") Margaret Wallace, Dr. Ingrid Feder, Nursing Supervisor

Kara Phillips, Registered Nurse ("RN") Beth Shaw and Registered Nurse ("RN") Janine

Brennan. Compl., ECF No. 1 (Oct. 23, 2020). He claims that the Defendants were deliberately

indifferent to his serious medical needs from June 2019 to August 2020 during his confinement

as a sentenced inmate at Corrigan-Radgowski Correctional Institution.

For the reasons set forth below, the Court will **DISMISS** the Complaint in part.

The requests for declaratory and injunctive relief and the Fourteenth Amendment due

process claim asserted against RN Janine Brennan are **DISMISSED** under 28 U.S.C. §

1915A(b)(1). The Court will permit the Eighth Amendment deliberate indifference to medical

needs claims to **PROCEED** against APRN Margaret Wallace, Dr. Ingrid Feder, Nursing

Supervisor Kara Phillips, RN Beth Shaw and RN Janine Brennan in their individual capacities.

By **July 2, 2021**, Mr. Solek shall sign and date the copy of the Complaint and

electronically file the signed and dated copy of the complaint to the Court together with a Notice

indicating that he is filing the signed complaint in compliance with this Order using the Prisoner

Electronic Filing Program at McDougall-Walker Correctional Institution under the Standing

Order on Prisoner Electronic Filing Program, ECF No. 5 (Oct. 23, 2020).

## I.      BACKGROUND

From June 17, 2019 to June 20, 2019, Mr. Solek allegedly submitted inmate request

forms seeking treatment for tinnitus in his right ear, pain in the fourth toe of his right foot and an

umbilical bulge. Compl., ECF No. 1 ¶ 1 (Oct. 23, 2020). On June 26, 2019, APRN Wallace

allegedly examined Mr. Solek and concluded that his umbilical bulge was a small reducible

umbilical hernia that was not painful on palpation. *Id.* ¶¶ 3-4. On July 3, 2019, Mr. Solek

allegedly sent an inmate request form to Nursing Supervisor Phillips because he had not received

the medication prescribed by APRN Wallace for his tinnitus and toe pain. *Id.* ¶ 11. He allegedly

received no response to the request. *Id.*

On July 8, 2019, Mr. Solek allegedly sent an inmate request form to Nursing Supervisor

Phillips seeking approval for a bottom bunk pass due to symptoms of dizziness, painful hernia

and toe pain. *Id.* ¶ 12. On July 9, 2019, Mr. Solek allegedly learned from a nurse that his request

for a bottom bunk pass had been sent to APRN Wallace for approval. *Id.* ¶ 13. On July 21, 2019,

Mr. Solek allegedly sent an inmate request form to Nursing Supervisor Phillips because he had

not heard from APRN Wallace about his bottom bunk pass. *Id.* ¶ 14. Later that day, a nurse

allegedly informed Mr. Solek that his bottom bunk pass had been reviewed. *Id.* ¶ 15.

On September 25, 2019, Mr. Solek allegedly sent an inmate request form to APRN

Wallace to find out why she had not called him back to have his hernia re-assessed. *Id.* ¶ 18.

APRN Wallace allegedly did not respond to the request. *Id.* Mr. Solek allegedly filed two

requests for health services review. *Id.*

On October 3, 2019, a correctional officer allegedly observed Mr. Solek doubled over in pain in his cell. *Id.* ¶ 19. After allegedly informing the officer that he was experiencing pain in his hernia, a nurse allegedly examined Mr. Solek and stated that she would put him on the sick call list. *Id.*

On October 10, 2019, Mr. Solek allegedly filed two requests for health services review complaining about APRN Wallace's failure to call him to the medical department to re-assess his hernia. *Id.* ¶ 20. On December 3, 2019, Mr. Solek allegedly filed appeals of both requests for health services review because he had not received a response to either request. *Id.* ¶¶ 121-22. On the same date, Mr. Solek allegedly filed two inmate request forms. *Id.* ¶¶ 23, 25. In the first request, Mr. Solek allegedly sought a renewal of his bunk pass and stated that his hernia was excruciatingly painful. *Id.* ¶ 23. In the second request, Mr. Solek allegedly complained about the medical treatment provided by APRN Wallace on June 26, 2019 and noted that his hernia had grown larger. *Id.* ¶ 25. On December 5, 2019, in response to both December 3, 2019 inmate request forms, Nursing Supervisor Phillips allegedly indicated that Mr. Solek had been added to the sick call list. *Id.* ¶¶ 24, 26.

On December 6, 2019, as Mr. Solek allegedly completed his shift in the library, a correctional officer allegedly became concerned because the left side of Mr. Solek's face was drooping. *Id.* ¶ 27. The officer allegedly thought Mr. Solek might have suffered a stroke and contacted the medical department. *Id.* About an hour later, Dr. Feder allegedly assessed Mr. Solek for a stroke and also checked Mr. Solek's hernia. *Id.* ¶ 30. Dr. Feder allegedly ruled out a stroke, prescribed Motrin, renewed Mr. Solek's bottom bunk pass, noted that Solek's hernia was painful and instructed Solek to return to the medical department if he had any questions or

3

concerns. *Id.* ¶ 31.

On March 12, 2020, Mr. Solek allegedly submitted two inmate request forms seeking medical treatment. *Id.* ¶¶ 32, 34. In the first request, Mr. Solek allegedly sought to be placed on the sick call list because his hernia had grown in size and had become much more painful and complained that Dr. Feder had not called him back for an appointment to reassess his hernia. *Id.* ¶ 32. In the second request, Mr. Solek allegedly explained to Nursing Supervisor Phillips that his hernia was extremely painful and that APRN Wallace and Dr. Feder had neglected to provide him with medication to alleviate his painful hernia and had failed to call him back to the medical department for a follow-up appointment. *Id.* ¶ 34. On March 13, 2020, in response to his first request dated March 12, 2020, RN Shaw allegedly informed Mr. Solek that he was on the sick call list. *Id.* ¶ 33. On March 20, 2020, in response to his second request dated March 12, 2020, Nursing Supervisor Phillips allegedly informed Mr. Solek that he was on the sick call list and asked Mr. Solek if the pain caused by his hernia would prevent him from performing his job in the library. *Id.* ¶ 35.

On March 14, 2020, RN Shaw allegedly called Mr. Solek to the medical department. *Id.* ¶ 37. She allegedly examined Mr. Solek and noted the pain in the area of his hernia and that he had been prescribed 800 milligrams of Motrin to be taken three time a day. *Id.* Mr. Solek allegedly reported that the prescription had been effective in alleviating his pain. *Id.* RN Shaw allegedly explained that it could be dangerous to take the prescribed dosage of Motrin for longer than seven days. *Id.* ¶ 38. She allegedly prescribed 200 milligrams of Motrin to be taken three to four times a week. *Id.* ¶¶ 38-39. RN Shaw allegedly did not refer Mr. Solek for hernia surgery. *Id.* ¶ 39.

4

On March 21, 2020, a nurse allegedly assessed Mr. Solek in his cell and noted that his hernia had become larger and more painful. *Id.* ¶¶ 41-42. She allegedly flagged Mr. Solek's file for hernia surgery. *Id.* ¶ 42.

On March 28, 2020, Mr. Solek allegedly sent an inmate request form to Nursing Supervisor Phillips to explain that his hernia was still painful, he had received medication that failed to alleviate his painful condition. *Id.* ¶ 43. Dr. Feder, RN Shaw and APRN Wallace allegedly had refused to refer him for surgery and prison officials had removed him from his job in the library. *Id.* On April 3, 2020, Mr. Solek allegedly filed two requests for health service review. *Id.* ¶¶ 45, 47. In the first request, Mr. Solek allegedly sought a long-term prescription for pain medication and to be referred for surgical repair of his hernia  *Id.* ¶¶ 45-46. In the second request, Mr. Solek allegedly complained that Nursing Supervisor Phillips failed to investigate his requests for pain medication and surgery. *Id.* ¶¶ 47-48. On April 5, 2020, Nursing Supervisor Phillips allegedly informed Mr. Solek that he was on the sick call list and she was looking into his concerns. *Id.* ¶ 44.

On April 28, 2020, RN Brennan, allegedly responsible for reviewing requests for health services review, allegedly rejected both requests of Mr. Solek's April 3, 2020 requests because they were untimely. *Id.* ¶ 50. On April 30, 2020, Mr. Solek allegedly sent two inmate request forms to RN Brennan. *Id.* ¶¶ 55, 57. In the first request, Mr. Solek allegedly stated that RN Brennan had improperly rejected his April 3, 2020 request for health services review. *Id.* ¶ 55. In the second request, Mr. Solek allegedly complained that Dr. Feder, RN Shaw and APRN Wallace had refused to prescribe him long-term pain medication or schedule him for surgery. *Id.* ¶ 57.

On May 3, 2020, Mr. Solek allegedly filed a request for health services review. *Id.* ¶ 63. On May 5, 2020, RN Brennan allegedly responded to both requests dated April 30, 2020. *Id.* ¶¶ 56, 58. In response to the first request, Brennan allegedly informed Mr. Solek that there was a new version of Administrative Directive 8.9 governing administrative remedies for inmate health-related issues. *Id.* ¶ 56. In response to the second request, Brennan allegedly instructed Mr. Solek to attempt to informally resolve his need for medical treatment by sending requests to Dr. Feder and Nurses Shaw and Wallace. *Id.* ¶¶ 58-60. Brennan allegedly provided a further response indicating that she could uphold Mr. Solek's request if all that Mr. Solek wanted was to be approved for hernia surgery. *Id.* ¶¶ 60-61. She allegedly informed Mr. Solek, however, that the surgery would not take place for quite a while because of the COVID-19 pandemic. *Id.*

On May 5, 2020, Mr. Solek allegedly sent a request to the medical department seeking a new pass for bottom bunk and informed the department about his medical issues. *Id.* ¶ 66. On May 6, 2020, Mr. Solek allegedly received response to the request indicating that he was on the sick call list. *Id.* ¶ 67. On May 11, 2020, Mr. Solek allegedly filed two requests for health services review. *Id.* ¶¶ 69, 72. In the first request, he allegedly complained that Dr. Feder, RN Shaw and APRN Wallace had refused to prescribe him long-term pain medication or schedule him for surgery and RN Brennan kept denying his requests for health services review. *Id.* ¶ 69. In the second request, Mr. Solek allegedly complained that RN Brennan had failed to properly process his requests for health services review. *Id.* ¶ 72.

On May 17, 2020, a nurse allegedly examined Mr. Solek. *Id.* ¶ 68. During the examination, the nurse allegedly instructed Mr. Solek on how to manage the hernia. *Id.*

On May 18, 2020, Mr. Solek allegedly sent an inmate request form to RN Brennan to

find out if she had received both his requests for Health Services Review dated May 11, 2020. *Id.* ¶ 72. On May 20, 2020, RN Brennan allegedly indicated that his hernia surgery was an elective procedure and could not be scheduled until he was examined by a physician; the wait for surgery was over a year; Mr. Solek was scheduled to see a physician soon; and that he should speak to the physician about what medication/treatment might be necessary as he waited to undergo the surgical procedure to correct his hernia. *Id.* ¶ 73. RN Brennan also allegedly indicated that the May 11, 2020 request for health services review addressed to her conduct would be returned to him because he had had made no attempt to informally resolve. *Id.* Later that day, Mr. Solek allegedly sent an inmate request form to RN Brennan asking why the request for health services review that was addressed to improper conduct had been rejected. *Id.* ¶ 74.

On May 21, 2020, RN Brennan allegedly upheld the first May 11, 2020 request for health services review and indicated that Mr. Solek would be scheduled to see a physician or doctor. *Id.* ¶ 70. On May 22, 2020, a nurse allegedly formally rejected the second May 11, 2020 request for health services review because Mr. Solek had not attached a staff member response demonstrating his attempt to informally resolve the matter. *Id.* ¶ 73. On May 26, 2020, Mr. Solek allegedly wrote to a nurse asking her to renew his bottom bunk and bottom tier passes and to provide him with pain medication and an abdominal binder. *Id.* ¶ 77. On May 27, 2020, a medical provider allegedly informed Mr. Solek that he had been approved for both a bottom bunk pass and bottom tier pass and that the passes would remain in effect until May 19, 2021. *Id.* ¶ 78.

On June 1, 2020, Mr. Solek allegedly sent an inmate request form to a nurse informing her that Dr. Feder, RN Shaw and APRN Wallace had refused to prescribe him long-term pain

medication or schedule him for surgery and asked the nurse to schedule him for hernia surgery and to prescribe medication to treat his severe abdominal pain. *Id.* ¶ 81. On June 3, 2020, Dr. Feder allegedly responded to the request and indicated that the severity of an umbilical hernia was diagnosed by physical examination, Mr. Solek's umbilical hernia was not the type of hernia that required emergency surgery because it had not become "incarcerated," and that an MRI, x-ray, ultrasound was unnecessary to further diagnose his hernia. *Id.* ¶ 82.

On June 3, 2020, a nurse allegedly filed a request with the Utilization Review Committee ("URC") for approval of a referral of Mr. Solek to a surgeon for a consultation regarding a procedure to correct his umbilical hernia and for approval of the surgical procedure. *Id.* at 31. On June 6, 2020, Mr. Solek allegedly asked a nurse to discontinue his prescription for Neurontin and sought a prescription for a stronger pain medication. *Id.* ¶ 84. The nurse allegedly noted that Mr. Solek was scheduled to see a provider and that the plan was to monitor his medication per protocol. *Id.*

On June 10, 2020, a nurse allegedly examined Mr. Solek in response to his complaints of abdominal pain caused by his umbilical hernia and in response to his complaint of pain in his left leg and noted that he was awaiting an abdominal CT scan and a surgical consultation if deemed appropriate. *Id.* ¶¶ 91-93. The nurse allegedly recommended that Mr. Solek be provided with an abdominal binder. *Id.* ¶ 93.

On June 11, 2020, RN Brennan allegedly responded to Mr. Solek's May 20, 2020 inmate request form. *Id.* ¶ 75. She allegedly asked Mr. Solek to watch his tone because it might be perceived as a threat and instructed him not to refer to her as Augusto. *Id.*

On June 11, 2020, in response to a June 7, 2020 inmate request from Mr. Solek, RN

8

Brennan allegedly indicated that she would send him copies of the responses to his May 11, 2020 requests for health services review and that he could not appeal one of the responses because it had been rejected for failing to attach evidence of an attempt to informally resolve it. *Id.* ¶ 86.

On June 17, 2020, Mr. Solek allegedly filed an appeal of the May 3, 2020 request for health services review because he had received no response to it. *Id.* ¶ 64. He allegedly did not receive a response to the appeal. *Id.* ¶ 65.

On June 19, 2020, Mr. Solek allegedly filed a request for health services review challenging Dr. Feder's response to one of his June 1, 2020 inmate requests because she indicated that his umbilical hernia was not a serious condition that required immediate surgery even though she had not examined him in a year. *Id.* ¶¶ 100-03. Mr. Solek allegedly also complained that Dr. Feder had refused to offer him stronger medication in response to his request to discontinue his prescription for Neurontin because it was not effective in alleviating his abdominal pain. *Id.* On June 23, 2020, Mr. Solek allegedly submitted an inmate request to RN Brennan claiming that RN Shaw and APRN Wallace had "exhibited poor medical practice which had left [him] in extreme pain." *Id.* ¶ 104. On June 9, 2020, RN Brennan allegedly informed Mr. Solek that he had been referred for a consultation with a physician at UCONN to determine his need for surgery to correct his umbilical hernia. *Id.* ¶ 106.

On June 23, 2020, Mr. Solek allegedly sent a request to Dr. Feder complaining that his hernia was painful and was affecting his daily activities. *Id.* ¶¶ 108-10. On August 21, 2020, the Utilization Review Committee allegedly granted the request for approval of a referral of Mr. Solek to a surgeon for a consultation regarding a procedure to correct his hernia and the request for approval of the surgical procedure. *Id.* at 31.

9

## II.      STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'" (quoting 28 U.S.C. § 1915A)). This standard of review "applies to all civil complaints brought by prisoners against governmental officials or entities regardless of whether the prisoner has paid a filing fee." *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004) (internal quotation marks and alterations omitted).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Id.* at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford pro se litigants).

## III.   DISCUSSION

As an initial matter, Federal Rule of Civil Procedure 11(a) requires that "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented." *Id.*  But the Complaint does not include Mr. Solek's signature. Thus, the Complaint is subject to dismissal for failure to comply with Rule 11(a).

Mr. Solek claims that all Defendants were deliberately indifferent to his serious medical needs and that Defendants Brennan and Phillips denied him due process in failing to properly

process his inmate request forms and requests for health services review, and appeals of those requests. Mr. Solek seeks injunctive and declaratory relief from the Defendants in their official capacities and compensatory damages from the Defendants in their individual capacities. Compl. at 33.

The Court will address each of these issues in turn.

## A.     Official Capacity Claims – Declaratory Relief

Under the doctrine of *Ex parte Young,* 209 U.S. 123 (1908), a plaintiff may seek prospective injunctive and declaratory relief to address an ongoing or continuing violation of federal law or a threat of a violation of federal law in the future. *See In re Deposit Ins. Agency,* 482 F.3d 612, 618 (2d Cir. 2007); *Ward v. Thomas*, 207 F.3d 114, 120 (2d Cir. 2000). The Eleventh Amendment of the U.S. Constitution, however, "does not permit judgments against state officers declaring that they violated federal law in the past." *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *Green v. Mansour*, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of *Young* . . . to claims for retrospective relief").

Mr. Solek nevertheless seeks a declaration that the Defendants engaged in conduct that violated his federal constitutional rights under the Eighth and Fourteenth Amendment rights. Under the prevailing caselaw cited above, his claim for declaratory relief for any past harm is barred by the Eleventh Amendment.

Accordingly, Mr. Solek's requests for declaratory relief will be dismissed. *See* 28 U.S.C. § 1915A(b)(1).

## B.     Official Capacity Claims – Injunctive Relief

While the Eleventh Amendment does not pose an insurmountable barrier to prospective injunctive or declaratory relief, an inmate's requests for prospective injunctive relief from correctional officers or officials in connection with conditions of confinement at a particular correctional institution become moot when the inmate is discharged from that institution, is transferred to a different institution, has been released from prison or has received the relief requested. *See Shepherd v. Goord*, 662 F.3d 603, 610 (2d Cir. 2011) ("In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief." (citation and internal quotation marks omitted)); *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed").

Mr. Solek seeks an injunction directing the Defendants "to no longer commit these same acts again, [to] correct any mistakes first discovered properly, [to] properly process all grievances even against fellow employees, and [to] report any misconduct by employees." Compl. at 33. When he filed this lawsuit, Mr. Solek had been in custody at MacDougall-Walker and currently remains at MacDougall-Walker. Because Mr. Solek is no longer confined at Corrigan-Radgowski, his requests seeking injunctive relief in the form of orders directing the Defendants, employees at Corrigan-Radgowski, to refrain from prior unspecified behavior, to process grievances and to report the misconduct of other employees at Corrigan-Radgowski, do not constitute requests to remedy ongoing violations of his rights.

Accordingly, Mr. Solek's requests for injunctive relief against correctional officials at Corrigan-Radgowski will be dismissed as moot. *See* 28 U.S.C. § 1915A(b)(1).

C.   **Individual Capacity Claims – Fourteenth Amendment Due Process**

Inmates have no constitutional entitlement to grievance procedures, to receive a response to a grievance, or to have a grievance processed properly. *See Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018) (summary order) (claim relating to grievance procedures "confuse[d] a state-created procedural entitlement with a constitutional right;" "neither state policies nor 'state statutes . . . create federally protected due process entitlements to specific state-mandated procedures' " (quoting *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003))); *Brown v. Graham*, 470 F. App'x 11, 13 (2d Cir. 2012) (summary order) ("Brown's argument that he has a federally-protected liberty interest in the state's compliance with its own prison grievance procedures is meritless." (citing *Holcomb*, 337 F.3d at 224)); *Kalican v. Dzurenda*, No. 3:12-cv-1009 (SRU), 2015 WL 1806561, at *6 (D. Conn. Apr. 21, 2015) (finding plaintiff had "no constitutional entitlement to receive responses to his grievances").

Mr. Solek alleges that RN Brennan, in her role as a reviewer of requests for health services review, and Nursing Supervisor Phillips failed to properly and/or timely process his inmate requests and requests for health services review in accordance with State of Connecticut Administrative Directive 8.9. He contends that the failure to properly process medical requests and grievances violated his right to due proves under the Fourteenth Amendment. These allegations, however, fail to state a viable claim. *See Garcia v. Semple, et al.*, No. 3:18-cv-1226 (SRU), 2019 WL 5597771, at *15 (D. Conn. Oct. 30, 2019) (finding that "allegations that a prison official violated the procedures set forth in a state's administrative remedy program that is applicable to prisoner grievances do not state a claim of a violation of an inmate's constitutional rights," and collecting cases).

Accordingly, the Fourteenth Amendment due process claims asserted against Nursing

14

Supervisor Phillips and RN Brennan will be dismissed. *See* 28 U.S.C. § 1915A(b)(1).

    **D.**    **Individual Capacity Claims – Eighth Amendment Deliberate Indifference**

    In *Estelle v Gamble*, the Supreme Court held that the Eighth Amendment prohibits "deliberate indifference to serious medical needs of prisoners." 429 U.S. 97 at 104 (1976). Deliberate indifference may not only be exhibited "by prison doctors in their response to the prisoner's needs" or "by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104-05.

    To state an Eighth Amendment deliberate indifference claim, an inmate must meet two elements. The first element requires the inmate to allege facts that demonstrate that his medical need or condition is objectively serious. *See Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (a serious medical need contemplates "a condition of urgency" such as "one that may produce death, degeneration, or extreme pain"). In determining whether a condition is serious, the court considers whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks omitted).

    To meet the second element of an Eighth Amendment deliberate indifference claim involving a medical condition, an inmate must allege that the official acted with the requisite *mens rea,* that is, that the prison official or medical provider was actually aware that his actions or inactions would create a substantial risk of serious harm to the inmate. *See Hill*, 657 F.3d at 122. Mere negligent conduct, however, does not constitute deliberate indifference. *Id.* at 123 ("'[A] complaint that a physician has been negligent in diagnosing or treating a medical

condition does not state a valid claim of medical mistreatment under the Eighth Amendment.'"
(quoting *Estelle*, 429 U.S. at 106)). Nor does a difference of opinion between a medical provider
and an inmate regarding a diagnosis or appropriate medical treatment. *Chance*, 143 F.3d at 703.

### 1.    Objective Component

Mr. Solek alleges that his umbilical hernia caused him to experience chronic pain and
that the pain worsened during the year before he underwent a surgical procedure to correct the
condition. He contends that the painful condition interfered with his daily activities. These
allegations are sufficient to meet the objective component of the Eighth Amendment standard.
*See, e.g.*, *Jenkins v. Trachtman*, No. 9:17-CV-0126, 2017 WL 7163935, at *3 (N.D.N.Y. Dec.
22, 2017) (acknowledging that not all hernias rise to the level of a serious medical condition but
concluding that plaintiff's hernia, which required surgery and caused him pain, constituted
serious medical need under Eighth Amendment); *Byng v. Wright*, No. 09-CV-9924(PKC)(JCF),
2012 WL 967430, at *11 (S.D.N.Y. Mar. 20, 2012) (finding chronic pain during nine-month
delay of surgery for hernia sufficient to support assumption that inmate suffered
from serious medical condition on motion to dismiss); *Pine v. Seally*, No. 9:09-CV-1198
(DNH/ATB), 2011 WL 856426, at *7 (N.D.N.Y. Feb. 4, 2011) (finding alleged hernia condition
and pain satisfied objective prong of deliberate indifference claim); *Scaccia v. Cty. of Onondaga*,
No. 5:07-CV-0207 (GTS/GJD), 2009 WL 4985683, at *6-7 (N.D.N.Y. Dec. 15, 2009) (same).

### 2.    Subjective Component

Mr. Solek also alleges that over a fourteen-month period, he filed multiple inmate
requests and medical grievances seeking medication to alleviate his painful hernia condition and
seeking to be referred for a consultation with a surgeon to determine whether he required a

16

procedure to correct his condition. The Defendants allegedly either failed to respond to his requests or failed to prescribe or provide him with medication to treat and relieve the pain caused by his umbilical hernia. Additionally, the Defendants allegedly made no effort to facilitate the timely scheduling of a surgical consultation. At this stage of the case, these factual allegations are sufficient to state a claim that Defendants were aware of his serious medical condition were deliberately indifferent to his painful and worsening condition. *See Spavone v. New York State Dep't of Corr. Servs.,* 719 F.3d 127, 138 (2d Cir. 2013) (defendants "need only be aware of the risk of harm, not intend harm . . . [a]nd awareness may be proven from the very fact that the risk was obvious." (internal quotation marks and citations omitted)); *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) ("The reckless official need not desire to cause such harm or be aware that such harm will surely or almost certainly result. Rather, proof of awareness of a substantial risk of the harm suffices.").

Accordingly, this Eighth Amendment claim will proceed against the Defendants in their individual capacities.

## ORDERS

The Court enters the following orders:

**(1)** The requests for declaratory and injunctive relief, and the Fourteenth Amendment due process claim asserted against RN Janine Brennan are **DISMISSED** under 28 U.S.C. § 1915A(b)(1). The Court will permit the Eighth Amendment deliberate indifference to medical needs claims to **PROCEED** against APRN Margaret Wallace, Dr. Ingrid Feder, Nursing Supervisor Kara Phillips, RN Beth Shaw and RN Janine Brennan in their individual capacities.

**(2)** Before entering an order directing the Clerk of Court to serve the complaint on the

17

Defendants in their individual capacities and an order directing the Defendants to respond to the complaint, Mr. Solek must submit a signed copy of the complaint. The Clerk of Court is directed to mail a copy of the Complaint, ECF No. 1, a copy of this Order and a copy of the Standing Order Prisoner Electronic Filing Program, ECF No. 5, to Mr. Solek at his address on file with the Court.

By **July 2, 2021**, Mr. Solek shall sign and date the copy of the Complaint and electronically file the signed and dated copy of the complaint to the Court together with a Notice indicating that he is filing the signed complaint in compliance with this Order using the Prisoner Electronic Filing Program at McDougall-Walker Correctional Institution pursuant to the Standing Order on Prisoner Electronic Filing Program, ECF No. 5.

If Mr. Solek fails to return the Complaint, including his signature and the date on which he signed the complaint, by **July 2, 2021**, the Court will dismiss the case under Rule 41(b) for Mr. Solek's failure to comply with an order of the Court and the Federal Rules of Civil Procedure. Fed. R. Civ. P. 41(b). If Mr. Solek returns the signed and dated complaint by **July 2, 2021**, the Court will enter an order for service of the Complaint as well as a scheduling order setting forth deadlines for filing a response to the complaint, conducting discovery and filing summary judgment motions.

**SO ORDERED** at Bridgeport, Connecticut this 28th day of May, 2021.

 /s/ Victor A. Bolden             
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE