UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Timothy Solek  *Plaintiff* | : | Case No. 3:20–cv–1600 (OAW) |
| | : | |
| *v.* | : | |
| | : | |
| Margaret Wallace  *Defendant* | : | APRIL 8, 2022 |

### RULING ON DEFENDANT WALLCE'S MOTION TO DISMISS

Plaintiff Timothy Solek ("Mr. Solek") is a prisoner currently incarcerated at MacDougall-Walker Correctional Institution. Mr. Solek filed a § 1983 civil rights action against several healthcare professionals who treated him during his confinement at Corrigan-Radgowski Correctional Institution ("Corrigan"). Plaintiff and several of the originally named defendants have filed a stipulation of dismissal. *See* ECF No. 56. As a result, only one defendant remains – Margaret Wallace. Defendant Wallace has moved to dismiss the action on the grounds that Mr. Solek has failed to exhaust his administrative remedies. Mot. to Dismiss, ECF No. 24. The court finds it unnecessary to address the exhaustion issue because Mr. Solek, as an initial matter, has failed to plead a deliberate indifference claim under the Eighth Amendment. Defendant Wallace's motion to dismiss hereby is **GRANTED**. Because the Eighth Amendment claim is the only claim remaining, the court hereby dismisses the complaint, and directs the clerk to terminate the action.

I. **BACKGROUND**

Plaintiff filed his initial complaint on October 23, 2020.[1]  He alleges that several healthcare professionals were deliberately indifferent to his serious medical needs during his confinement as a sentenced inmate at Corrigan.  Specifically, Plaintiff alleges that the healthcare staff repeatedly ignored his written requests for medical treatment to address his umbilical hernia, which resulted in a painful fourteenth month delay in receiving a referral to a surgeon.  The specific facts alleged in the complaint are as follows:

During Plaintiff's incarceration at Corrigan, he sent a written request to the medical staff seeking a sick call visit to address tinnitus, fourth toe pain, and an umbilical bulge.  Compl., ECF No. 1 at ¶ 1.  On June 26, 2019, Plaintiff received a medical examination from Defendant Wallace, an advance practice registered nurse ("APRN").  *Id.* 1 at ¶ 3.  The exam notes, which are attached to the complaint, indicate that Plaintiff reported a right ear ringing, occasional headache with dizziness/lightheadedness, right toe pain, and an umbilical hernia without pain.  *Id.* at p. 37.  As specified in the "Practitioner Assessment & Plan" section of her notes, Defendant Wallace diagnosed Plaintiff with "[c]hronic unilateral tinnitus" and "[r]ight 4th toe arthalgia," for which she prescribed pain medication.  *Id.* at 39.  With respect to the hernia, Defendant Wallace conducted a physical examination and noted a "small reducable umbilical hernia without pain on palpation."  *Id.*  She advised Plaintiff "to monitor for any symptoms of pain, swelling or erythema and

---

[1]     Plaintiff filed a "Corrected Complaint" on June 11, 2021.  *See* ECF No. 13.  This version of the complaint contains the same substantive information as the original handwritten complaint, and merely corrects certain misnumbered paragraphs in the original complaint.  The corrected complaint also contains Plaintiff's signature, which the court identified in its initial review order as missing from the original complaint.  Initial Review Order, ECF No. 10 at p. 11.  For purposes of this ruling, however, the court will refer to the original complaint filed at ECF No. 1.  The corrected complaint contains pages that are numerically out of order; scanned upside down; and, due to the poor scanning quality, certain pages are impossible to decipher without referring to the original complaint.  *See* ECF No. 13 at p. 3–10.  For ease of reference, and because there are no substantive changes to the corrected complaint, the court will rely on Plaintiff's initial complaint.

return if any of these occur," and to "[a]void heavy lifting or situps." *Id.* Plaintiff alleges that during the exam, Defendant Wallace promised to re-examine his hernia after 90 days. *See id.* at 6, ¶ 18. The notes from the exam, however, fail to indicate any discussion with respect to a follow-up visit. *Id.* at 37.

After his June 26 exam, Plaintiff completed an "Inmate Request Form" on July 8, 2019 and July 21, 2019. *Id.* at 42. Each of the requests were addressed to the "medical supervisor," and sought a renewal of Plaintiff's bottom bunk pass due to pain associated with his right toe, severe migraines, dizziness, and his hernia. *Id.* at 40; 42. Within the request forms, Plaintiff also asks to "know the reasons why APRN meg wont do anything for [his] hernia (or) the nerve damage & arthritis in [his] 4th toe." *Id.* at 42. In the forms, Plaintiff also states that Defendant Wallace "won't operate on [his] hernia," and that he is "in constant severe pain." *Id.* at 40. Plaintiff received a response from "Nurse Kayla" that his renewal request was sent to Defendant Wallace. *Id.* at 40. Plaintiff's bunk pass was ultimately renewed. *Id.* at 42.

On September 25, 2019, Plaintiff completed yet another Inmate Request Form. *Id.* at 43. This time, the form was addressed to Defendant Wallace directly. *Id.* Plaintiff asks why she "never called [him] back to medical" after she told him that she would schedule a follow up examination to check on the growth of his hernia. *Id.* Moreover, Plaintiff states that he was told to contact medical if he experiences pain, and that he has contacted them, but is receiving no treatment. *Id.* Plaintiff alleges that he never received a response from Defendant Wallace on his September 25 Inmate Request Form. I*d.* at p. 6, ¶ 18.

On October 10, 2019, Plaintiff filed two medical grievances. *Id.* at p. 6, ¶ 20. The first grievance requested a Health Services Review ("HSR") of his diagnosis/treatment

and the second grievance requested an HSR of "all other health care issues." *Id.* at 44–45. Plaintiff alleges that he never received a response to either of these grievances. *Id.* at p. 6, ¶ 20. On December 3, 2019, Plaintiff filed an appeal of both grievances. *Id.* at p. 7, ¶ 21. Plaintiff never received a response to his September 25 request to Defendant Wallace, his October 10 grievances, or his December 3 appeal. *Id.* 7, ¶ 22.

The complaint does not allege any further attempted contact with Defendant Wallace. In fact, the only interaction between Plaintiff and Defendant Wallace is the June 26, 2019 exam. For example, Plaintiff was seen on December 6, 2019 for an emergency sick call visit for the possibility of a stroke, *id.* at 8, ¶ 27–30; on March 14, 2020 to examine his hernia growth, *id.* at 9–10, ¶¶ 32–37; and on March 21, 2020 to again examine his hernia. *Id.* at 9–10, ¶¶ 41–42. None of these visits involved Defendant Wallace.

Plaintiff did, however, complain about Defendant Wallace in future Inmate Request Forms addressed to other healthcare professionals at Corrigan. On March 28, 2020, Plaintiff wrote to nursing supervisor Kara Phillips ("Ms. Phillips") and stated that Defendant Wallace only gave him a prescription for one week, and then sent him on his way. *Id.* at 59. Plaintiff filed an Inmate Request Form on June 23, 2020, again complaining that Nurse Wallace had promised a follow up examination and denied him surgery. *Id.* at 35. Janine Brennan ("Ms. Brennan"), the registered nurse responsible for reviewing prisoner health grievances, responded stating "[a]s far as your displeasure with Meg or Beth, the person who referred you fixed whatever mistake they may have made." *Id.* at 35. Neither the complaint nor the attached response from Ms. Brennan describes the "mistake" committed by Defendant Wallace (who is referred to as Meg). However,

4

Plaintiff's complaint states that Defendant Wallace "exhibited poor medical practice which left me in pain." *Id.* at 23, ¶ 104.

The court finds it unnecessary to outline the remaining allegations of the complaint which do not pertain to the claims against Defendant Wallace. Instead, these allegations concern actions taken by the other originally named defendants, all of whom are now dismissed. *See* Stipulation of Dismissal, ECF No. 56. For example, Plaintiff alleges that Ms. Brennan, as the designated health services reviewer, failed to properly investigate his grievances filed on Defendant Wallace, Compl. at 14–15, ¶¶ 57–63; 16–17, ¶¶ 69–74. Plaintiff also documents additional medical visits with healthcare staff at Corrigan, *id.* at 19, ¶ 80; 21, ¶ 91, but these visits never involved Defendant Wallace. In fact, the complaint alleges that Defendant Wallace no longer worked at Corrigan while Plaintiff was attempting to obtain a surgery consultation for his hernia. *Id.* at 23, ¶ 105.

Plaintiff asserts an Eighth Amendment claim of deliberate indifference against Defendant Wallace in her individual capacity. He seeks compensatory damages in the amount of $25,000 and any other relief deemed by the court as just, proper, and equitable.

## II.    DEFENDANT'S MOTION TO DISMISS

Defendant Wallace moves to dismiss the claims against her on two grounds. First, she argues that Plaintiff's claims sound in medical malpractice rather than a constitutional violation of the Eighth Amendment. Second, she argues that Plaintiff has failed to exhaust his available administrative remedies in contravention to the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA").

With respect to the first ground, Defendant Wallace originally argued that Plaintiff's claims should be dismissed because the complaint fails to conform to Connecticut's

5

statutory requirements for bringing a medical malpractice action. *See* Conn. Gen. Stat. § 52-190a. Under the statute, a plaintiff in a medical malpractice case must attach to the complaint a certificate of good faith and a written opinion from a similar healthcare provider that there appears to be evidence of medical negligence. *Id.* Plaintiff's complaint fails to attach either a certificate of good faith or a written medical opinion. However, after Defendant Wallace filed her motion to dismiss, the Second Circuit released a decision holding that § 52-190a is inapplicable to malpractice actions brought in federal court. *See Corley v. United States*, 11 F.4th 79, 89 (2d Cir. 2021). Defendant Wallace has since moved to withdraw the portion of her argument which relies on § 52-190a. The court hereby grants Defendant Wallace's motion to withdraw, and the § 52-190a argument will not be addressed. *See* Mot. to Withdraw Pleading in Part, ECF No. 49.

The court also notes that Plaintiff has filed a number of sur-replies to Defendant Wallace's motion to dismiss without first seeking the court's permission. Local Rule 7(d) expressly states that "[n]o sur-replies may be field without the permission of the Court, which may, in its discretion, grant permission upon a showing of good cause." D. Conn. L. Civ. R. 7(d). After the briefings on Defendant Wallace's motion had closed, Plaintiff filed a "Brief Reply to Defendant's Reply" (ECF No. 43), a "Brief Reply to the Defendant's Counselor's Reply" (ECF No. 45), and a "Motion In Re-Buttal to Defendant's Claim of Plaintiff's Failure to Exhaust Remedies" (ECF No. 51). Each of Plaintiff's three sur-replies responded to arguments contained in Defendant Wallace's reply brief on her motion to dismiss. The rules contemplate that whenever a motion is made, there may only be one opposition filed, and one reply to the opposition, which is filed by the party making the motion. D. Conn. L. Civ. R. 7(a); (d). Any further briefing by either party requires the

court's permission.  See D. Conn. L. Civ. R. 7(d).  Plaintiff's second sur-reply (ECF No. 45) claims to have "new evidence" relevant to the motion to dismiss.  The court will review the second sur-reply to the extent that it contains new evidence relevant to the motion to dismiss.  However, the court will strike Plaintiff's first and third sur-replies in their entirety: ECF No. 43 & 51.

### III. STANDARD

To avoid dismissal under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," and not merely "conceivable."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The court shall accept as true all factual allegations in the complaint and draw all reasonable inferences in a plaintiff's favor.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555; *see also Ashcroft v. Iqbal,* 556 U.S. 662, 684, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (concluding that *Twombly* pleading standard applies in "all civil actions").

### IV. DISCUSSION

The Eighth Amendment outlaws "cruel and unusual punishments."  U.S. Const. amend. VIII.  This means that "the punishment must not involve the unnecessary and wanton infliction of pain."  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).  The Supreme Court has held that "deliberate indifference to serious medical needs of prisoners

constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v Gamble*, 429 U.S. 97, 104 (1976) (citing *Gregg*, 428 U.S. at 173).

An inmate must meet two elements to state a claim of deliberate indifference to medical needs. First, the inmate must demonstrate that the medical need or condition is objectively and sufficiently serious. For a condition to be "sufficiently serious" there must exist "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). Second, the inmate must demonstrate that the defendants acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003). The state of mind element is equivalent to that required for criminal recklessness. *Hathaway*, 99 F.3d at 553. Thus, the inmate must show that the defendant "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of [(1)] facts from which the inference could be drawn that a substantial risk of serious harm exists, and [(2) the official] must also draw the inference." *Id.*

Mere allegations of negligent malpractice are insufficient to state a claim of deliberate indifference. *Jones v. Vives*, 523 F. App'x 48, 49 (2d Cir. 2013). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. Instead, a deliberate indifference claim may be premised on a showing of medical practice only where the conduct involves "culpable recklessness" evincing a healthcare provider's "conscious disregard of a substantial risk of serious harm." *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citing *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998)).

Defendant Wallace maintains that Plaintiff's claims sound in a medical malpractice action rather than a deliberate indifference claim.  The court agrees.  Even if Plaintiff has satisfied the first element of the deliberate indifference test by showing that his hernia is a "sufficiently serious" medical condition capable of causing "death, degeneration, or extreme or chronic pain," Plaintiff's complaint nevertheless fails to allege that Defendant Wallace acted with the requisite state of mind required for a deliberate indifference claim. *See Rice v. McDonald*, No. 3:21-cv-1563 (SRU), 2022 U.S. Dist. LEXIS 6644, at *6 (D. Conn. Jan. 13, 2022) (finding that inmate failed to assert a deliberate indifference claim against healthcare staff who were not "subjectively reckless" in administering care).

Plaintiff's chief complaint against Defendant Wallace is that after the June 26, 2019 exam, she failed to provide him with a referral to a surgeon for a hernia consultation, would not operate on the hernia herself, and she failed to conduct a follow-up exam as originally promised.  Plaintiff also alleges that Defendant Wallace failed to respond to his September 25, 2019 inmate request form in which he asked for a follow-up.  Compl. at 43.  To state a claim of deliberate indifference against Defendant Wallace, Plaintiff must show that she was "actually aware" of a substantial risk that serious harm would result from her actions or inactions.  *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013).  Defendant Wallace's notes from the June 26 exam indicate that Plaintiff had a "small reducable umbilical hernia *without* pain on palpation" and that Plaintiff had "[n]o acute distress."  Compl. at 39.  Defendant Wallace prescribed pain medication for Plaintiff's tinnitus and right fourth toe pain, and advised Plaintiff to monitor his hernia and avoid heavy lifting and sit-ups. Plaintiff does not dispute the contents of Defendant Wallace's medical notes from the June 26 exam.  Pl.'s Opp., ECF No. 32 at 7.

Plaintiff alleges that Defendant Wallace had the ability to review prior sick call reports with respect to his hernia, but the prior reports (including an exam conducted on June 22) also fail to indicate any hernia related pain.  ECF No. 45 at 15.

Plaintiff has not alleged any facts demonstrating that Defendant Wallace actually knew that it would cause Plaintiff serious harm to deny him access to a surgeon or conduct a follow-up examination, particularly when Plaintiff repeatedly expressed that he had no hernia related pain.   Defendant Wallace only ever treated Plaintiff once, and the two of them had no further contact.  Indeed, courts have found that a singular point of contact with a healthcare professional is insufficient to give rise to a deliberate indifference claim.  *Rice v. McDonald*, No. 3:21-cv-1563 (SRU), 2022 U.S. Dist. LEXIS 6644, at *6 (D. Conn. Jan. 13, 2022) (inmate failed to allege facts showing that each defendant was aware of a serious risk of harm, but did nothing, when the inmate "saw each nurse only once").

Moreover, there are no factual allegations indicating that Defendant Wallace was ever aware that Plaintiff's hernia had worsened after the June 26 exam, and that she knowingly failed to provide follow up care or respond to Plaintiff's September 25 inquiry.  Indeed, Plaintiff's complaint suggests that Defendant Wallace was, at one point, no longer even affiliated with Corrigan such that she would have had the ability to continue treating Plaintiff.  *See* Compl. at 112.  Plaintiff's complaint fails to plausibly allege that Defendant Wallace acted with the reckless state of mind required under the deliberate indifference test.  To the extent that Plaintiff disagrees with the treatment Defendant Wallace provided during the June 26 exam, such as by failing to provide long-term pain medication or refusing to operate on the hernia, "[i]t is well-established that mere disagreement over the

10

proper treatment does not create a constitutional claim." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998). "So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Id.* Defendant Wallace provided Plaintiff with advice pertaining to his hernia and prescribed him treatment for his other conditions. She conducted a physical exam to evaluate the hernia, and found that Plaintiff did not experience pain on palpation. She continued the physical exam on Plaintiff's respiratory, cardiovascular, gastrointestinal, and neurological systems. She noted that Plaintiff was not in any acute distress. On the face of the complaint, the court cannot say that Defendant Wallace's actions are so inadequate as to give rise to the heightened standard of recklessness that is required for a deliberate indifference claim. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) ("'Deliberate indifference'" describes a mental state more blameworthy than negligence".). Plaintiff's allegations are akin to that of a negligence claim brought in a medical malpractice suit, as the complaint alleges that Defendant Wallace "exhibited poor medical practice" which left him "in extreme pain." Compl. at 23, ¶ 104. In the absence of any allegation that Defendant Wallace had actual awareness of the seriousness of Plaintiff's hernia or other conditions, and deliberately refused to provide Plaintiff treatment while knowing that such treatment would cause Plaintiff harm, the complaint simply does not give rise to a constitutional violation of Plaintiff's Eighth Amendment rights.

Plaintiff notes that the court allowed him to proceed with the deliberate indifference claim in its initial review order. ECF No. 10 at 15. Indeed, the court stated in its initial review that "Defendants allegedly made no effort to facilitate the timely scheduling of a surgical consultation" and they "failed to respond to his requests or failed to provide him

with medication to treat and relieve the pain caused by his medical hernia." *Id.* The court, however, did not evaluate the specific claim with respect to Defendant Wallace. It merely analyzed the complaint as a whole, against all Defendants. Regardless, the fact that the court permitted the Eighth Amendment claim to proceed in its Initial Review Order does not preclude a motion to dismiss under Rule 12(b)(6) and a subsequent finding by the court, after entertaining such a motion, that the claim fails to satisfy the plausibility standard under *Iqbal*, 556 U.S. at 678. *See Smalls v. Wright*, No. 3:16-CV-2089 (JCH), 2017 U.S. Dist. LEXIS 127743, 2017 WL 3474070, at *4 (D. Conn. Aug. 11, 2017) (court not bound by Initial Review Order that plaintiff had stated plausible claim); *Torres v. McGrath*, No. 3:15-CV-1558 (VLB), 2017 U.S. Dist. LEXIS 120048, 2017 WL 3262162, at *5 n.2 (D. Conn. July 31, 2017) (same). Therefore, Plaintiff's reliance on the initial review order is misplaced.

## V.   CONCLUSION

For the reasons noted herein, Plaintiff has failed to state a claim under the Eighth Amendment. Defendant Wallace's motion to dismiss is **GRANTED**. The clerk is directed to terminate the action.

**IT IS SO ORDERED.** Signed this Eighth day of April, 2022 at Hartford, Connecticut.

/s/ Omar A. Williams
Omar A. Williams
United States District Judge